UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGORY SHIVELY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cv-00357-JMS-TAB |
| ) | |
| CHRIS PLATT et al., ) | |
| SEVIZZI Mr., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Gregory Shively, an inmate at Plainfield Correctional Facility ("PCF"), brought this action alleging constitutional violations related to asbestos exposure at the PCF gymnasium. Dkt. 2. Defendants, David Platt and Gregory Servizzi, have moved for summary judgment. Dkt. 28. Both Defendants argue that summary judgment is proper because Mr. Shively was not subject to an objectively serious condition, they were not deliberately indifferent to the risk of asbestos exposure, and they are entitled to qualified immunity. *Id.* Mr. Shively has not responded. For the reasons explained in this Order, Defendants are entitled to summary judgment on all of Mr. Shively's claims and the motion, dkt. [28], is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir.

2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. Shively failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Shively and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

During the time period at issue, Plaintiff Gregory Shively was an inmate incarcerated at Plainfield Correctional Facility. Dkt. 29-1 at 10 (Shively's Deposition).

Defendant David Platt was an employee at PCF and managed the operations of the gymnasium. *Id.* at 25-26. He formally held the title of Recreation Coordinator. Dkt. 29-2 at 1. According to Mr. Shively "nothing goes on in the gym that [Mr. Platt] doesn't give the okay for. So whatever goes on in the gym, he okays it or he's against it." Dkt. 29-1 at 27.

Defendant Jason Servizzi was an employee at PCF and served as the Physical Plant Director. Dk 29-3 at 1. He oversaw all maintenance for the entire PCF facility. *Id*.

### B. Mr. Shively's Exposure to Asbestos and PCF Testing

In or about early 2022, the heating system in the PCF gym was not operational, and the cold temperatures caused the floor tiles in the gym to slowly loosen, tile-by-tile. Dkt. 29-2 at 1. When tiles became loose from the floor, Mr. Platt or other recreational workers would remove them from the gym and place them in a closed room. *Id.*

By May of 2022, Mr. Platt attested that he was instructed by IDOC staff to remove the remaining tiles from the gym floor that had not already become loose from the temperature fluctuations. Dkt. 29-2 at 1.

Mr. Platt then instructed the recreation workers to remove all the remaining tiles from the gym floor. Dkt. 29-1 at 27. Mr. Shively was not one of the rec workers involved in the removal of gym floor tiles. Dkt. 29-1 at 18. However, all inmates who were involved in the removal efforts were offered masks. Dkt. 29-2 at 1. Mr. Platt alleges he was not ever aware of aware of the presence of asbestos in the gymnasium. Dkt. 29-2 at 2.

On May 17, 2022, Plant Director Servizzi learned about the possibility of asbestos, and another IDOC employee sent correspondence to have the gym floor tested. Dkt. 29-3 at 1. Mr. Shively alleges that Defendant Servizzi gave the order for inmates to continue to remove the tile instead of utilizing outside employees. Dkt. 29-1 at 29.

After the initial removal of the tiles, Mr. Shively was present within the gym approximately for an hour every day and would sit and watch other inmates play basketball. Dkt. 29-1 at 18, 20. During that time, he inhaled dust and debris that had come loose from the floor tiles in the air. *Id*. at 19. He estimates that he was exposed to these inhalants for approximately one week before the gym closed. *Id*. at 20.

On May 26, 2022, August Mack Environmental, a licensed asbestos testing company, performed an assessment of the PCF gymnasium. Dkt. 29-4 at 1. The assessment, delivered in mid-June, reported that there was asbestos containing material ("ACM") present within the gym and "the ACMs identified as part of this survey do not require abatement provided that these materials are maintained in good condition (or non-friable state), and they will not be disturbed or impacted (rendered friable) by any renovation or operations and maintenance activities." *Id*. at 4.

From early June through mid-October, the gym was shut down per IDOC executive staff. Dkt. 29-2 at 1. However, Mr. Shively testified that the gym was opened and closed numerous times after the initial June closure, and that he was exposed other times outside of his initial one-week period of exposure. Dkt. 29-1 at 22. On August 4, 2023, August Mack again performed asbestos tests within the PCF gymnasium and determined that "all air samples collected within the gymnasium were determined to be below the AHERA clearance level… and therefore, meet the criteria." Dkt. 29-4 at 15.

In November of 2022, there were still asbestos-contaminated tiles present behind the bleachers in the PCF gymnasium. Dkt. 2 at 3. Mr. Shively alleges that to cover up the extent of the asbestos contamination, PCF staff simply pulled the bleachers down to where others could not see that the tile was still present. Dkt. 29-1 at 24. After other inmates complained, PCF utilized non-inmates to finally removed all remaining contaminated tiles. *Id*. at 25.

### C. Mr. Shively's Serious Health Conditions

In March of 2023, Mr. Shively began experiencing shortness of breath, blood during coughing fits, increased heart rate, and frequent choking. Dkt. 29-1 at 12-14. Although he had always suffered from asthma, Mr. Shively experienced a sharp increase in the severity of his symptoms after his alleged asbestos exposure, and his normal inhaler use drastically began to increase. *Id*. Mr. Shively visited the infirmary numerous times in March of 2023 with reports of difficulty breathing and shortness of breath, but medical staff took no action. *Id*. In April of 2023, Mr. Shively was diagnosed with an infected lung and clogged heart valve, and he was given portable oxygen and breathing treatments. *Id*. at 15.

Prior to his exposure, Mr. Shively used to work out at the PCF gym at least three times a week. *Id*. At the time of his deposition, he was unable to work out and perform daily tasks because of his health conditions and severe shortness of breath. *Id*.

### III.
### Discussion

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an

5

excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Conditions of confinement must be severe to support an Eighth Amendment claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id*. at 834. The Eighth Amendment only protects prisoners from conditions that exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). In other words, "[a]n objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quotation marks and citations omitted).

As the Seventh Circuit has explained, "the mere presence of asbestos in a prison does not violate the Eighth Amendment; exposure to moderate levels of asbestos is a common fact of contemporary life and cannot, under contemporary circumstances, be considered cruel and unusual." *Contreras v. Hawk*, 77 F.3d 484 (7th Cir. 1996) (quotation marks and brackets omitted). Here, Mr. Shively alleges that he was exposed to asbestos containing materials that potentially became airborne for a period of approximately one week in May of 2022. Dkt. 29-1 at 20. Although he alleges that the gym opened and closed multiple times after that point, during which

time he *may* have been present at the gym and been exposed to asbestos containing materials, he has provided no evidence as to when the gym allegedly reopened or any other evidence that would allow a reasonable jury to quantify any additional period of exposure beyond the short time period discussed in his deposition. *Id*. at 22. Perhaps if Mr. Shively had pointed to further evidence allowing a reasonable inference as to the amount of exposure between May and August of 2022, a reasonable juror could find the conditions were objectively serious. However, the Court cannot make speculative inferences in his favor. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non-movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)).

      Further, there is no evidence that either Defendant was deliberately indifferent to the risks of Mr. Shively's asbestos exposure. Mr. Platt testified that he was not aware of the presence of asbestos in the gymnasium. Dkt. 29-2 at 2. And the record reflects that once Mr. Servizzi discovered that there was a possibility of asbestos present in the gym, IDOC staff promptly requested an assessment from a licensed asbestos testing company. Dkt. 29-3 at 1. Once PCF staff received the results that confirmed the presence of asbestos in the gym, executive staff members closed the facility from June to November to prevent further exposure to inmates. Dkt. 29-2 at 1. Mr. Shively has presented no evidence outside of conclusory allegations that this was not the case or that David Platt of Jason Servizzi were deliberately indifferent in any of their actions after the gym was reopened. Plaintiff is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.* No reasonable juror could find that the Defendants were deliberately indifferent to

the risks of asbestos in the PCF gym. Accordingly, Defendants David Platt and Jason Servizzi's motion for summary judgment, dkt. [28], is **GRANTED**.[1]

## IV.
## Conclusion

Defendants David Platt and Jason Servizzi's motion for summary judgment is **GRANTED**. Dkt. [28].

Final Judgment shall now issue.

**IT IS SO ORDERED.**

Date: 2/12/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

GREGORY SHIVELY
882351
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jordan Douglas Hall
Lewis and Wilkins LLP
hall@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

---

[1] Because the Court concludes that Defendants did not violate the Eighth Amendment, it need not address their alternative argument that they are entitled to qualified immunity.